# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DeJuan Haywood Haggins,

                    Petitioner,

vs.

City of St. Paul, St. Paul
Police Department, Officer
Kellum, Officer Stevens,
Officer Thomas, Officer
Radke,

                  Defendants.           Civ. No. 09-537 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Defendants' Motion for Summary Judgment.[1]  For

---

[1]In an Affidavit, the Plaintiff avers that Saint Paul Police Officer John Corcoran
was accidentally named as "Officer Thomas" in his Complaint.  The Plaintiff has not
filed a Motion to Amend the Complaint, and pro se litigants are not excused from
complying with the Federal Rules of Civil Procedure.  See, Carman v. Treat, 7 F.3d
1379, 1381 (8th Cir. 1993).  Accordingly, we do not substitute any person for a

these purposes, the Plaintiff DeJuan Haywood Haggins appears pro se, and the Defendants' appear by Lawrence J. Hayes, Jr., Assistant St. Paul City Attorney. For reasons which follow, we recommend that the Defendants' Motion for Summary Judgment be granted in part.

## II.  Factual and Procedural Background

The Plaintiff, who is an inmate at the Minnesota Correctional Facility, in Stillwater, Minnesota, commenced this action on March 6, 2009, by filing a Complaint seeking relief under Title 42 U.S.C. §1983.  See, Docket No. 1.  Reading his pleadings indulgently, as we must, see, Williams v. Carter, 10 F.3d 563, 567 (8th Cir. 1993)("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding."), citing Estelle v. Gamble, 429 U.S. 97 (1976), the Plaintiff alleges that the Defendants used excessive force when they arrested him on April 30, 2007, and while he was being held at the Ramsey County Adult Detention Center ("ADC"), violated his right to due process, and retaliated against him with physical force, when he asked to make a complaint.  Id.

---

Defendant, who is named in the Complaint, as we have no personal jurisdiction over any person who has not been properly served with the Plaintiff's Complaint, and who has not been properly notified of the claims against him or her.

The undisputed facts, concerning the incident in question, are that the Plaintiff was arrested in a hotel room in the Crown Plaza Hotel, which is located in downtown St. Paul, on the night of April 30, 2007, after he had attempted to rob, with a replica pistol, the Radisson Hotel, which is also located in downtown St. Paul.  See, Complaint, Docket No. 1, at p. 4 of 8; Affidavit of Officer Nick Kellum ("Kellum Aff."), Exhibit 1, Docket No. 18-1, at p.1¶3 of 23; Affidavit of Officer Eric Stevens ("Stevens Aff."), Exhibit 2, Docket No. 18-1, at pp. 5-6¶¶6-7 of 23; Affidavit of Officer John Corcoran ("Corcoran Aff."), Exhibit 3, Docket No. 18-1, at p. 11¶8 of 23.  St. Paul Police officers chased the Plaintiff, who ran through the skyway, and locked himself in the bathroom of a hotel room at the Crowne Plaza.  See, Complaint, Docket No. 1, at p. 5 of 8; Declaration in Opposition to Defendants' Reply, Docket No. 43, at p1¶1 of 1; Kellum Aff., Docket No. 18-1, at p. 2¶¶5-6 of 23; Stevens Aff,; Stevens Aff., Docket No. 18-1, at p. 5¶¶4-5 of 23; Corcoran Aff., Docket No. 18-1, at p. 11¶5 of 23.

It is also undisputed that a police dog, named Juda, bit the Plaintiff on his lower legs, and that three (3) officers, the Defendants Kellum ("Kellum"), and Stevens ("Stevens"), and Officer Corcoran ("Corcoran") -- who is not named as a Defendant -- struck the Plaintiff on his face, arms, and shoulders, during that arrest.  See,

Complaint, Docket No. 1, pp. 4-7 of 8; Kellum Aff., Docket No. 18-1, at p. 2¶¶6-7 of 23; Stevens Aff., Docket No. 18-1, at p. 5¶¶5-6 of 23; Corcoran Aff., Docket 18-1, at p. 11¶¶6, 8 of 23. The replica handgun, which was made of plastic, was recovered by the officers from the towel rack of the hotel bathroom, where the Plaintiff had barricaded himself. See, Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket No. 35, at p. 2 of 2; Affidavit of Shawn Campbell, Exhibit 4, Docket 18-1, at p. 14 ¶¶3-4 of 23, and Exhibit B.

The Plaintiff contends that, after he locked himself in the hotel bathroom, St. Paul Police Officer Darren Johnson, who filed a report on the incident,[2] spoke to him through the door, and encouraged him to come out, at which time, the Plaintiff came out of the bathroom with his hands raised. See, Plaintiff's Affidavit in Opposition to Defendants' Reply, Docket No. 43, at p.1¶2 of 1. The Plaintiff alleges that, after he was handcuffed and patted down, Kellum, Stevens, and Corcoran, set Juda upon his legs to bite him, and struck him with their fists, and flashlights, in order to extract

_____

[2]The Plaintiff has submitted a number of Police Reports, but has not verified or attested to their accuracy, and has appended hand-written comments on each report. See, Docket No. 1-1, at pp. 1-8 of 8; Docket No. 44, at pp. 1-2 of 2. As the statements, which are contained in the reports, are largely repeated by the Defendants in their sworn Affidavits, we rely on those Affidavits for the Defendants' version of events.

information about the location of the handgun that had been used during the robbery. See, Plaintiff's Affidavit in Opposition to Kellum's Affidavit, Docket No. 31, at p.1-2¶¶1,5 of 2; Plaintiff's Affidavit in Opposition to Stevens' Affidavit, Docket No. 27, at p. 1¶2 of 2; Plaintiff's Declaration, Docket No. 13, at p. 1¶1-3 of 1; Plaintiff's Affidavit in Support of Plaintiff's Skill, Docket No. 28, at p. 3¶14 of 5.

The Plaintiff contends that he was handcuffed for the entire time that he was beaten, and that he refused to answer the investigatory questions. See, Plaintiff's Affidavit in Opposition to Stevens' Affidavit, Docket No. 27, at p. 1¶2 of 2; Plaintiff's Declaration in Opposition to Kellum's Affidavit, Docket No. 31, at p. 2¶5 of 2. It is undisputed that the Plaintiff suffered a number of puncture wounds from the dog bites. See, Plaintiff's Declaration in Opposition to Kellum's Affidavit, Docket No. 31, at p. 2¶6 of 2; Stevens Aff., Docket No. 18-1, at p. 6¶8, 10, and Exhibit A. The Plaintiff contends that one of the wounds required stitches, and that he also suffered a swollen face from the beating. See, Complaint, Docket No. 1, at p. 4 of 8; Affidavit in Opposition to Stevens' Aff., Docket No. 27, at p. 2¶6 of 2.

According to the Defendants, they were dispatched to the Radisson Hotel, upon a call of an aggravated robbery, and upon their arrival, they were informed that the Plaintiff had attempted to rob the Hotel with a handgun, and had fled through the

skyway towards the Crown Plaza Hotel, without removing his hands from his pockets. See, Kellum Aff., Docket No. 18-1, at pp. 1-2¶3-4 of 23; Stevens' Aff., Docket 18-1, at p. 1¶1 of 23; Corcoran Aff., Docket No. 18-1, at p. 10¶¶1-2 of 23. Kellum, with Juda, Stevens, and Corcoran, contend that they were informed, by an unidentified male, that the Plaintiff had gone into a hotel room. The officers stood outside of that hotel room door, and Kellum loudly announced that they were from the St. Paul Police Department, that they had a dog, and that the Plaintiff should surrender himself or risk being bitten. Kellum Aff., Docket 18-1, at p. 2¶4 of 23; Stevens Aff., Docket 18-1, at p.5¶3 of 23; Corcoran Aff., Docket 18-1, at pp. 10-11¶3.

According to the Defendants, Kellum waited approximately twenty (20) seconds, and then gave the warning again, but the Plaintiff did not respond. Kellum Aff., Docket 18-1, at p.2¶4 of 23; Stevens Aff., Docket 18-1, at p.5¶3 of 23; Corcoran Aff., Docket 18-1, at pp. 10-11¶3 of 23. The Defendants contend that Kellum commanded Juda to "find him," and Juda went to the bathroom door and began to bark, at which time, Kellum gave the warning for a third time. Kellum Aff., Docket 18-1, at p. 2¶¶4-5 of 23; Stevens Aff., Docket 18-1, at p.5¶4 of 23; Corcoran Aff., Docket 18-1, at p. 11¶4 of 23. Upon hearing no response, the Defendants attempted to open the bathroom door, but the Plaintiff was holding it closed, and the Defendants

had to forcibly push the door open.  Kellum Aff., Docket 18-1, at p. 2¶5 of 23; Corcoran Aff., Docket 18-1, at p. 11¶5 of 23.  Kellum contends that he stayed near the wall in order to maintain cover, while Juda entered the bathroom, and bit the Plaintiff's left leg.  Kellum Aff., Docket 18-1, at p. 2¶¶5-6 of 23; Corcoran Aff., Docket 18-1, at p. 11¶5 of 23.  Kellum states that, at that time, he ordered the Plaintiff to show his hands, and get down on the floor, but that the Plaintiff refused to show his hands, which were hidden beneath his long t-shirt, at his waistband, and that he was thrusting his legs out in an effort to kick Juda, and the officers.  Kellum Aff., Docket 18-1, at pp. 2-3¶6-7 of 23; Stevens Aff., Docket 18-1, at p.5¶6 of 23; Corcoran Aff., Docket 18-1, at p. 11¶6 of 23.

The Defendants maintain that they feared for their safety, because the Plaintiff was reportedly armed, and that they commanded Juda to "hold him," and struck him, in order to force him to comply with their verbal commands to show his hands. Kellum Aff., Docket 18-1, at p. 3¶7 of 23; Corcoran Aff., Docket 18-1, at p. 11¶7 of 23.  Specifically, Kellum asserts that he delivered a punch to the Plaintiff's right shoulder area, and struck the Plaintiff's arm and shoulder area twice more.  See, Kellum Aff., Docket 18-1, at p. 3¶7 of 23.  Corcoran attests that he delivered two (2) closed-fist punches to the Plaintiff's head, striking him in the face.  See, Corcoran

Aff., <u>Docket 18-1</u>, at p. 11¶78of 23.  Stevens contends that he struck the Plaintiff with his flashlight, once on the right triceps area, and once on the right thigh, and then he delivered three (3) close-fist strikes to the right shoulder blade area, at which time, the Plaintiff showed his hands, and was handcuffed. See, <u>Stevens Aff.</u>, <u>Docket 18-1</u>, at p.5¶6 of 23.

The Plaintiff relates that, after the arrest, he was not taken to a hospital, for the treatment of his dog bites, for about one (1) hour, and he hypothesizes that the Defendants used that time to fabricate their version of the events.  See, <u>Complaint</u>, <u>Docket No. 1</u>, at p. 4 of 8.  In contrast, the Defendants argue that the Plaintiff was transported to Regions Hospital after the arrest, but they do not specify at what time.  <u>Stevens Aff.</u>, <u>Docket 18-1</u>, at pp. 5-6¶7 of 23.

As to Defendant Thomas Radke ("Radke"), who is also a St. Paul Police officer, it is undisputed that Radke interviewed the Plaintiff on May 1, 2007, at the ADC, in order to obtain more information about the robbery the night before.  See,  <u>Affidavit of Thomas Radke ("Radke Aff.")</u>, <u>Exhibit 6</u>, <u>Docket No. 18-1</u>, at pp.21-22¶2 of 23; <u>Complaint</u>, supra at p. 7.  It is also undisputed that, during that interview, the Plaintiff refused to talk about anything, but the alleged beating that he had endured the night before.  <u>Id.</u>; <u>Complaint</u>, supra at p. 7.  The Plaintiff maintains that, after he expressed

the wish to file a complaint about the officers' conduct, Radke ended the interview, became belligerent, punched the Plaintiff in the chest, and then kicked the Plaintiff in his injured legs. See, <u>Complaint</u>, <u>Docket No. 1</u>, at pp. 7-8; <u>Plaintiff's Affidavit in Opposition of Defendant Radke's Affidavit</u>, <u>Docket No. 32</u>, at ¶3. For his part, Radke asserts that he informed the Plaintiff that he would need to file a complaint through the proper channels, that the Plaintiff became upset and began to yell, that Radke concluded the interview, and directed the Plaintiff to face the door so that he could be handcuffed for his return to his cell -- pursuant to routine procedure. When the Plaintiff failed to do so, and pushed Radke, as Radke attempted to turn the Plaintiff toward the door, Radke pushed his knee into the backside of the Plaintiff's knee, so that he could be handcuffed. See, <u>Radke Aff.</u>, <u>Docket No. 18-1</u>, at pp.22-23¶¶4-7 of 23.

### III.  Discussion

A.    <u>The Plaintiff's Motion for Default Judgment</u>.  As a preliminary matter, we address the Plaintiff's Motion for Default Judgment, which he filed on June 9, 2009.  See, <u>Docket No. 9</u>.  Although the Plaintiff filed the Motion three (3) months after the Complaint was filed, and approximately six (6) weeks before the Defendants filed their Answer, the Plaintiff failed to file an Affidavit of Service so as to demonstrate when, or if, the Defendants were served, and did not obtain an Entry of Default from the Clerk of Court, pursuant to Rules 55(a) and (b), Federal Rules of Civil Procedure.

Since the Defendants have made an appearance, and answered the Complaint, and because the Plaintiff has demonstrated no prejudice related to the timing of the Answer, and failed to follow the procedural prerequisites before filing his Motion for Default, we recommend the dismissal of the Plaintiff's Motion for Default Judgment. See, <u>Johnson v. Allied Interstate Inc.</u>, 2002 WL 1906024 at *2 (D. Minn., August 19, 2002) ("Although the entry of a default against [the defendant] would have been warranted as of the date [the plaintiff] brought her motion for default judgment, no default was entered on the docket pursuant to Rule 55(a), and the Court cannot ignore the fact that an Answer has now been filed and [the defendant] is prepared to defend

the lawsuit on the merits."), citing, <u>Johnson v. Dayton Electric Manufacturing Co.</u>, 140 F.3d 781, 783 (8th Cir. 1998)("When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)."); <u>United States v. Woods</u>, 2004 WL 790332 at *3 (D. Minn., March 31, 2004)("Rule 55(b)(2) commits the entry of a default judgment to the discretion of the district court."), citing <u>FTC v. Packers Brand Meats, Inc.</u>, 562 F.2d 9, 10 (8th Cir. 1977); see also, <u>Harris v. St. Louis Police Dept.</u>, 164 F.3d 1085, 1086 (8th Cir. 1998).

  B. <u>The Defendants' Motion for Summary Judgment</u>.

   1. <u>Standard of Review</u>. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, <u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1118 (8th Cir. 2006), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable

issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing

<u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003), cert. denied, 540 U.S.

823 (2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir.

2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved

and the resolution will determine the outcome of the case, while a dispute is "genuine"

if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving

party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned</u>

<u>Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004);

<u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.  In sustaining that burden, "an opposing party may not rely merely

on allegations or denials in its own pleading; rather, its response must -- by affidavits

or as otherwise provided in this rule -- set out specific facts showing a genuine issue

for trial." <u>Rule 56(e), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th

Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the

nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

 2. Legal Analysis. We separately address the individual aspects of the Defendants' Motion for dispositive relief.

 a. The St. Paul Police Department is Not a Legal Entity. The Plaintiff has sued the St. Paul Police Department under Section 1983. The Police Department is not a separate legal entity, however, and its liability is the same as the municipality -- in this case, the City of St. Paul. See, e.g., Tilson v. Forrest City Police Department, 28 F.3d 802, 807 (8th Cir. 1994)("'For the [Police] Department to

be liable under §1983 for a constitutional violation, a claimant must show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the Department] or that a constitutional deprivation [was] visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'"), quoting <u>Marchant v. City of Little Rock</u>, 741 F.2d 201 (8th Cir. 1984); <u>In re Scott County Master Docket</u>, 672 F. Supp. 1152, 1163 n. 1 (D. Minn. 1987). Accordingly, we recommend that the St. Paul Police Department's Motion for Summary Judgment be granted.

       b.    <u>The Monell Claim</u>. It is well settled that, under <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 691 (1978)[emphasis in original], a municipality "cannot be held liable **solely** because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." See, <u>Armstrong v. Mille Lacs County Sheriff's Dep't</u>, 228 F. Supp.2d 972, 983 (D. Minn. 2002). Of course, a municipality may be held liable, under Section 1983, if the execution of its policy, or custom, resulted in a deprivation of a constitutional right. <u>Id.</u>, citing <u>Monell v. Department of Social Servs.</u>, supra at 694; see also, <u>McMillian v. Monroe County</u>, 520 U.S. 781, 783 (1997)(determining

that a County is liable, under Section 1983, for the actions of its Sheriff, which constitute County policy); Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000)("[A] municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality"); McGautha v. Jackson County, 36 F.3d 53, 56 (8th Cir. 1994)("Respondeat superior does not apply under section 1983 because municipal liability is limited to conduct for which the municipality is itself actually responsible.").

"To establish the existence of a municipal 'custom,' [] [the Plaintiff] must show:  1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation." Musolf v. Ellis, 2009 WL 2171005 at *5 (D. Minn., July 17, 2009), quoting Ware v. Jackson County, 150 F.3d 873, 880 (8th cir. 1998); Mann v. Shevich, 2010 WL 653867 at *6 (D. Minn., February 23, 2010), quoting Jane Doe "A" v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990).

Here, the Plaintiff has failed to show the existence of any policy or custom, which has been adopted by the City of St. Paul, and which the Plaintiff specifically identifies as a constitutional violation. A <u>Monell</u> claim against the municipality, on the basis of excessive force, cannot be maintained without some custom, or official policy, in place that would mandate such conduct. See, <u>Mann v. Shevich</u>, supra at *6 ("That other lawsuits have been filed in the recent past involving allegations of misconduct by Itasca County deputies is not probative evidence of an unconstitutional custom."), quoting <u>Mettler v. Whitledge</u>, 165 F.3d 1197,1205 (8th Cir. 1999), for the proposition that the "Plaintiff] has produced no evidence regarding the factual background of these [other] complaints, nor has she shown that the incidents giving rise to these complaints bear any factual similarity to the [incident at issue in the current suit."). The Plaintiff has made no such evidentiary showing, and therefore, any <u>Monell</u> claims, which could be construed as being asserted against the municipality of St. Paul, should be dismissed as without merit.

In addition, "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." <u>Elder-Keep v. Aksamit</u>, 460 F.3d 979, 986 (8th Cir. 2006), citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). To prevail on a claim against a public official, therefore, "[t]he plaintiff must

prove that the 'municipality **itself** caused the constitutional violation at issue.'" Id.,

quoting Kuha v. City of Minnetonka, 365 F.3d 590, 604 (8th Cir. 2003)[emphasis in

original]. Here, because the Plaintiff has not alleged the facts required to sustain a

claim against the City of St. Paul, his official-capacity claims against Kellum, Stevens,

and Radke, must also fail, and therefore, we recommend a dismissal of those claims.

      c.   The Excessive Force Claim.[3] The Plaintiff has alleged that

Kellum and Stevens used unlawful force against him, in violation of his Fourth

Amendment right to be free from being seized through the exercise of excessive force,

once he had ceased resisting his arrest on April 30, 2007. Kellum and Stevens assert

that they used an appropriate amount of force, which was necessary because, in their

---

[3]Upon a liberal reading of the Complaint, we are not convinced that the Plaintiff has satisfied the strict pleading standard for individual-capacity claims against the Kellum, Stevens, and Radke. See, McKenzie v. Frokjer, 2009 WL 1392635 at *1 (D. Minn., May 15, 2009); Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Nonetheless, the Complaint organizes the allegations according to each officer, and the Defendants have responded with the defense of qualified immunity, which only applies to individual capacity claims. See, Bird v. Jefferson County Sheriff, 2010 WL 308327 at *1 (8th Cir., January 28, 2010)(though he did not specifically plead individual-capacity claims, the plaintiff had made it clear he intended to sue the defendants in their individual capacities); Helseth v. Burch, 109 F. Supp.2d 1066, 1073 (D. Minn. 2000), rev'd on other grounds, 258 F.3d 867 (8th Cir. 2001). Accordingly, we address the merits of the Plaintiff's claims, as the parties have done.

view, the Plaintiff was actively resisting arrest, and he was believed to be in possession of a handgun.

Claims that police officers have used excessive force in an arrest are analyzed under the Fourth Amendment's protection against unreasonable seizures. See, Nance v. Sammis, 586 F.3d 604, 609-10 (8th Cir. 2009), citing Graham v. Connor, 490 U.S. 386, 395 (1989). "The key question is 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Id., at 610, quoting Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005), cert. denied, 546 U.S. 957 (2005). To determine the objective reasonableness, Courts "look[] at the totality of the circumstances, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight.'" Id., quoting Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009).

"The alleged use of excessive force is generally an issue of fact." Duncan v. Storie, 869 F.2d 1100, 1103 (8th Cir. 1989), cert. denied, 493 U.S. 852 (1989), citing Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir. 1985). In assessing excessive force claims, we are immersed in questions of degree, which are rife with opportunities to

second-guess from a removed, and academic perspective.  Law enforcement officers "are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving."  Mann v. Yarnell, 497 F.3d 822, 826 (8th Cir. 2007), quoting Graham v. Connor, supra at 397; see also, Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005), quoting Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003), quoting, in turn, Graham v. Connor, supra at 396-97.

Considering the facts, as they were presented in the Plaintiff's Complaint and the sworn Affidavits and Declarations,[4] we are persuaded that there are genuine issues of material fact, as to whether the conduct of Kellum, and Stevens, violated the Plaintiff's Fourth Amendment right to be free from excessive force.  Notably, while the Plaintiff does not appear to contest that he possessed a plastic replica of a handgun, while he was in the bathroom -- which the Defendants had no reason to know was a toy -- the Plaintiff's averment, that he had already left the bathroom, shown his hands, been handcuffed, and was not actively resisting arrest, before Kellum released Juda to bite him, and before Kellum and Stevens, with Corcoran,

---

[4]Pursuant to Title 28 U.S.C. Section 1746, the Plaintiff's Declarations, signed under penalty of perjury, are competent evidence for purposes of the Summary Judgment Motion.  See, Hill v Kansas City Metro Task Force, 182 Fed.Appx. 620, 621-22 (8th Cir. May 31, 2006).

began to strike him, are sufficient to state a claimed violation of his rights under the Fourth Amendment.  See, Proctor v. Harmon, 257 F.3d 867, 868-69 (8th Cir. 2001) (inmate's testimony that officers had jumped on him, beat him with a flashlight, and punched him repeatedly, while he was handcuffed, precluded Summary Judgment in favor of the officers); Samuelson v. City of New Ulm, 455 F.3d 871, 877 (8th Cir. 2006)(genuine issue of material fact as to whether the plaintiff was beaten while not resisting arrest); Hill v Kansas City Metro Task Force, 182 Fed.Appx. 620, 622 (8th Cir., May 31, 2006)(genuine issue of material fact as to whether the defendants beat the plaintiff during or after handcuffing him); Mayard v. Hopwood, 105 F.3d 1226, 1228 (8th Cir. 1997)(slapping and punching person who was handcuffed, and in hobble restraints in back of a squad car, was excessive force); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000)(affirming denial of Summary Judgment where plaintiff alleged that the defendant had released a police dog after the plaintiff surrendered); Morrison v. Board of Trustees of Green Tp, 583 F.3d 394, 405 (6th Cir. 2009)("'[W]hen a suspect has been already been [sic] **restrained**, the officer's constitutional authority to use force is significantly more circumscribed.'"), quoting Bultema v. Benzie County, 146 Fed.Appx. 28, 37 (6th Cir. 2005)[emphasis in original]; Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998) (excessive

duration of dog bite, and improper encouragement of a continuation of the attack, could constitute excessive force, and the law was clearly established to that effect); Bunch v. Riley, 2008 WL 4278174 at *8 (W.D. Ark., September 18, 2008); Madison v. City of Minneapolis, 2004 WL 1630953 at *6 (D. Minn., July 15, 2004)(allegations of "post-ceasefire" kicking of the plaintiff would demonstrate a violation of the Fourth Amendment).

The Defendants have alleged a very different version of the operative events, in which they contend that the Plaintiff did not leave the bathroom, that he was resisting arrest, that he refused to demonstrate that he was unarmed, and that he was thrashing about the bathroom, which caused them to use force to safely subdue him. Any determination of the veracity of the Plaintiff's allegations will necessarily involve a weighing of the Plaintiff's credibility, against that of Kellum and Stevens. As a consequence, the determination of whether Kellum and Stevens violated the Plaintiff's Fourth Amendment rights is properly left to the finder of fact, and cannot be determined as a matter of law. Accordingly, we recommend that the Defendants' Motion for Summary Judgment be denied as to the excessive force claim against Kellum and Stevens.

Having determined that there is a genuine issue of material fact as to the allegation of a constitutional violation, we turn to whether the constitutional violation was sufficiently established, so as to foreclose the Motion of Kellum, and Stevens, for Summary Judgment on grounds of qualified immunity. Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See, Wilson v. Layne, 526 U.S. 603, 609 (1999); Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson v. Layne, supra at 614. The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful * * *; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S.

635, 640 (1987).  As a consequence, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'"  Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

"[T]he right to be free from excessive force in the context of an arrest has been clearly established for some time."  Wilson v. Spain, 209 F.3d 713, 716 n. 3 (8th Cir. 2000).  As a result, the question of qualified immunity, here, turns on whether the conduct of Kellum, and Stevens, was "objectively reasonable," in light of that clearly established law, and in practical effect, the "objective reasonableness" inquiry for purposes of qualified immunity is essentially identical to the Fourth Amendment "objective reasonableness" inquiry.  See, Wilson v. Spain, supra at 716, citing Nelson v. County of Wright, 162 F.3d 986, 989, 989-90, and 990 n. 5 (8th Cir. 1998).

Given our conclusion, that questions of material fact remain as to the nature and circumstances of the Plaintiff's arrest on April 30, 2007, which preclude Summary Judgment with respect to the reasonableness of the conduct of Kellum, and Stevens, we find that, when the facts are taken in the light most favorable to the Plaintiff -- as they must be for these purposes -- Kellum and Stevens are not entitled to qualified immunity as a matter of law.  See, Nance v. Sammis, supra at 611 ("Since the surrounding factual circumstances are in dispute, material questions of fact prevent

granting summary judgment on the basis of qualified immunity."). Accordingly, we recommend that the Motion for Summary Judgment be denied, as to the question of qualified immunity.

d.     <u>Radke's Conduct at the Post-Arrest Interview</u>. The Plaintiff alleges that Radke used unlawful force against him, after the conclusion of the interview on May 1, 2007. As a threshold matter, it is unclear whether the Plaintiff was an arrestee, or a pretrial detainee, during the interview with Radke. "Between arrest and sentencing lies something of a legal twilight zone," <u>Wilson v. Spain</u>, supra at 715, and the Supreme Court has left open the question of the appropriate analysis for the period of time between when an "'arrest ends and pretrial detention begins.'" <u>Id.</u>, quoting <u>Graham v. Connor</u>, supra at 395 n. 10.

Although the line has not been clearly drawn between an arrestee, and a pretrial detainee, for excessive force claims, similar cases, from this Circuit, have placed the Plaintiff's claim within the Fourth Amendment's purview. See, <u>Wilson v. Spain</u>, supra at 715-16 (affirming the use of a Fourth Amendment analysis to an excessive force claim that allegedly took place after the plaintiff was booked, and placed in a holding cell); <u>Moore v. Novak</u>, 146 F.3d 531, 535 (8th Cir. 1998)(approving application of a Fourth Amendment analysis when the alleged excessive force

- 24 -

occurred during the booking process); <u>Mayard v. Hopwood</u>, 105 F.3d 1226, 1228 (8th Cir. 1997)(affirming the use of a Fourth Amendment analysis to the alleged use of excessive force that occurred after the plaintiff had been arrested, and was being transported to police headquarters); see also, <u>Coleman v. Duluth Police Dep't</u>, 2009 WL 921145 at *18 (D. Minn., March 31, 2009)(analyzing claim of unconstitutional forcible restraint at a hospital, after arrest, under the Fourth Amendment); <u>McBride v. Clark</u>, 2006 WL 581139 at *23 (W.D. Mo., March 8, 2006)(analyzing claim of excessive force of a plaintiff, who was being held in jail on a Warrant, under the Fourth Amendment); <u>Ogden v. Johnson</u>, 2002 WL 32172301 at *2-3 (N.D. Iowa, September 5, 2002)(applying Fourth Amendment to conduct which occurred while the plaintiff was being processed at jail after arrest).  Accordingly, we apply a Fourth Amendment analysis to the Plaintiff's claim that Radke punched, and kicked him, immediately following the interview on May 1, 2007.

We find that the Plaintiff's claim for excessive force cannot be sustained, because the Plaintiff has not demonstrated that he suffered an actual injury as a result of Radke's conduct, which is an essential element to his excessive force claim.[5]  See,

---

[5]The Plaintiff's allegation, that Radke swore at him, and employed racial slurs, does not support a claimed constitutional violation. See, e.g., <u>Hopson v. Fredericksen</u>,
(continued...)

Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005)(excessive force claim cannot be sustained where the claimant shows no more than de minimis injuries); Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005)("An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment." ), citing Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995); Oliver v. City of Minneapolis, 2005 WL 2406035 at *6 (D. Minn., September 27, 2005)("[E]ven if the Court were to find fault with the officers' conduct, Plaintiff only sustained, at most minimal injury as a result of the force," and "[a] plaintiff's de minimis injury 'is insufficient to support a finding of a constitutional violation.'"), quoting Crumley v. City of St. Paul, supra at 1007; Hasher v. City of Rochester, 2005 WL 1925856 at *4 (D. Minn., August 11, 2005) ("[I]n absence of more than minimal injury, Plaintiff's claim that Defendants utilized excessive force during his arrest fails."); Giddens v. Porras, 2006 WL 2502261 at *6-7

---

[5](...continued)
961 F.2d 1374, 1378 (8th Cir. 1992)("[M]ere threatening language and gestures of a [state actor] do not, even if true, amount to constitutional violations.")[internal quotations omitted]. Further, while the Plaintiff has asserted, in his Memorandum in Opposition to the Motion, that his legs bled after Radke kicked him, his Memorandum is not verified under the penalty of perjury, nor are its contents sworn to, and therefore, those contents are not competent evidence which could establish this essential element of the Plaintiff's case -- an actual injury -- for purposes of the Summary Judgment Motion. See, Hill v Kansas City Metro Task Force, supra at 621-22 (verified documents, made pursuant to Title 28 U.S.C. Section 1746, are the equivalent of an Affidavit for Summary Judgment purposes).

(D. Minn., August 29, 2006)(the plaintiff's claim failed because he failed to show injury sustained as a result of the alleged kicks he received after being restrained at arrest).

As a consequence, taking the Plaintiff's evidence as true, we find that, in the absence of any evidence of an actual injury, which resulted from Radke's alleged conduct, the Plaintiff's Fourth Amendment claim against Radke must fail. Further, as we have found that the Plaintiff has not demonstrated that Radke violated the Plaintiff's Fourth Amendment rights, we find that Radke is entitled to qualified immunity for those claims. See, Burton v. Richmond, 370 F.3d 723, 729 (8th Cir. 2004), cert. denied, 544 U.S. 905 (2005)(the defendants were entitled to qualified immunity because the plaintiffs failed to show a constitutional violation).

Furthermore, even if we were to characterize the Plaintiff as a pretrial detainee, and analyze his allegations against Radke under the substantive Due Process standard, his claim would fail for, as explained by our Court of Appeals, "if [the plaintiff] cannot win his case under Fourth Amendment standards, it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome, standards that must be met to establish a Fourteenth Amendment substantive due process claim." Wilson v. Spain, supra at 716, citing County of Sacramento v. Lewis, 523 U.S. 833,

845-55 (1998) and <u>Latta v. Keryte</u>, 118 F.3d 693, 701-02 (10th Cir. 1997); see also,

<u>Bailey v. County of Kittson</u>, --- F. Supp.2d ----, 2009 WL 294229 at *23 (D. Minn.,

February 5, 2009)(dismissing an excessive force claim of a pretrial detainee because

a "close review of the Record has failed to disclose any competent evidence that the

taser gun caused **any** injury to the Plaintiff)[emphasis in original].

For example, a pretrial detainee wishing to bring a claim for a deprivation of

medical care, which is analyzed under the substantive Due Process standard, must

"place verifying medical evidence in the record to establish the detrimental effect of

delay in medical treatment to succeed on claims that such delay rose to the level of a

constitutional violation." <u>Beyerbach v Sears</u>, 49 F.3d 1324, 1326 (8th Cir. 1995),

abrogated on other grounds, as recognized by <u>Reece v. Groose</u>, 60 F.3d 487, 492 (8th

Cir. 1995); see also, <u>Freeman v. Franzen</u>, 695 F.2d 485, 493 (7th Cir. 1982), cert.

denied, 463 U.S. 1214 (1983); cf., <u>Petta v. Rivera</u>, 143 F.3d 895, 902-03 (5th Cir.

1998)(holding that substantive Due Process does not require "substantial injury," and

that the evidence of psychological pain and injuries were sufficient). Here, since the

Plaintiff has failed to demonstrate any injury, which resulted from Radke's alleged

conduct, his substantive due process claim would fail as well.

e.    The Due Process Claims.  In his Complaint, the Plaintiff generally asserts that his Due Process rights were violated by the Defendants, but he does not connect that claim to any particular conduct on the part of the Defendants. As he has alleged no procedural defects, we construe his claim to be that the Defendants' conduct violated his substantive due process rights.

However, the Supreme Court has held that, where, as here, the alleged violation falls within the scope of a specific constitutional provision, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  County of Sacramento v. Lewis, 523 U.S. 833, 743 (1998), quoting United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997); see also, Graham v. Connor, supra at 395 ("[**A**]**ll** claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.")[emphasis in original].  Accordingly, we find that an analysis, under the Fourth Amendment, is the proper vehicle to analyze allegations of excessive force, and we recommend dismissal of a substantive due process claim, with respect to the alleged beatings and dog attack.

The Plaintiff also makes a vague allegation that the Defendants attempted to "cover-up" the alleged excessive force, by falsifying the police reports that were related to the incident. To the extent that such an allegation can be read to raise a claim that his constitutional rights, including his substantive Due Process rights, were violated, any such claim must fail, because the Plaintiff has no constitutional right to an accurate police report, and because he has not alleged a deprivation of any liberty interest, particularly where the Record demonstrates that the Plaintiff entered a guilty plea, in State Court, for the robbery, and therefore, the allegedly false police reports did not result in his conviction. See, Harmon v. City of St. Louis County, 2009 WL 880024 at *3 (E.D. Mo., March 30, 2009)("There is no constitutional right to an accurate police report," and an officer's falsification of a report "only constitutes a due process violation when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property.")[collecting cases]; see also, Shock v. Tester, 405 F.2d 852, 855 (8th Cir. 1969)(finding no due process violation for an alleged false police report, where there was no deprivation of life, liberty, or property, and State law prohibited the use of an accident report as evidence in a criminal or civil proceeding); White v. Tamlyn, 961 F. Supp. 1047, 1056 (E.D. Mich. 1997)("[A]s to the filing of false reports, plaintiff has no cause of action under §1983" and, although

"[p]laintiff claims that the officers filed reports which did not detail the alleged abuse and tear gassing she sustained during her arrest," her claim failed because she failed to demonstrate "how the alleged erroneous writing and filing of these reports deprived her of life, liberty or property * * *."); see also, Estate of Smith v. Marasco, 318 F.3d 497, 511-512 (3rd Cir. 2003)(holding that "[c]over-ups that prevent a person who has been wronged from vindicating his rights violate the right of access to the courts protected by the substantive due process clause," but dismissing the claim because the plaintiffs had "not made a showing that the defendants' efforts either prevented the [plaintiffs] from filing suit or rendered their access to the courts ineffective or meaningless.").[6]

---

[6]If the Plaintiff's claim can be read to allege a conspiracy to violate civil rights, by the filing of false police reports, then we would also find that he has failed to adequately plead such a claim, because he has not pled any facts which could support "a meeting of the minds" to support such a claim, but instead, has relied upon his disagreement with the version of facts that is contained in the Defendants' police reports, and his assertion that the Defendants likely used the alleged hour, between his arrest and his medical treatment, to "get the collective story straight," neither of which are sufficient to support a reasonable inference of a conspiracy. Complaint, Docket No. 1, at p. 6 of 8; see also, Feist v. Simonson, 36 F. Supp.2d 1136, 1150 (D. Minn. 1999)(the plaintiff's evidence of conspiracy was insufficient, as it was merely "a series of discrepancies in various police reports and a couple of variations in [the defendant's] testimony."); Jones v. Wheeler, 2007 WL 1589550 at *11 (E.D. Ark., June 1, 2007), citing Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).

f.    Retaliation Claim.  The Plaintiff also appears to contend that Radke, Kellum, and Stevens, retaliated against him by beating him further, after he had expressed a wish to make a complaint related to the alleged beating and dog bites. "To establish a First Amendment retaliation claim under 42 U.S.C. §1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004), cert. denied, 546 U.S. 860 (2005).

Here, we find that the Plaintiff's allegations, that Radke, Kellum, and Stevens, retaliated against him, by beating him in response to his statements that he wanted to make a complaint about police misconduct, state a cognizable claim for a violation of the Plaintiff's First Amendment rights.  See, Mason v. Stock, 955 F. Supp 1293, 1306 (D. Kan. 1997)("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."), citing City of Houston v. Hill, 482 U.S. 451, 461-63 (1978).   Since the Defendants did not address this First Amendment claim in their Motion for Summary Judgment, and since the claim is not facially frivolous, we recommend no dismissal as to that claim.

g.    The State Law Claims.  In the Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment, he argues that he is also asserting "state assault and battery torts."   Our thorough review of the Plaintiff's filings, however, from both before and after that Memorandum, reveals no pleading which advises that the Plaintiff intended to raise any claims, other than those for alleged constitutional violations under Section 1983, and he appears to have viewed the Defendants' assertion of State law defenses of immunity, in their Answer, as an invitation to assert such State law claims.   See, "Memorandum in Opposition of Defendants Motion for Summary Judgment", Docket No. 35, at p. 2 of 2 ("Defendants **have** raised all state law defenses.")[emphasis in original].  Since this claim does not appear in a fair reading of the pleadings, it is not properly before the Court here, and we do not consider it.  See, Clemons v. City of Minneapolis, 2007 WL 1202331 at *6 n. 16 (D. Minn., April 20, 2007)(declining to consider a First Amendment claim, based upon statements made during arrest, where the complaint did not refer to the First Amendment), citing N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004); and citing, Butvin v. Double-Click, Inc., 2000 WL 827673 at *13 (S.D.N.Y., June 26, 2000), for the proposition that "[a] party is not entitled to amend his complaint through his memoranda."

In sum, we find that there are genuine issues of material fact as to conduct of Kellum, and Stevens, and the reasonableness of that conduct, and we recommend that the Summary Judgment Motion be denied as to the Plaintiff's claim that Kellum and Stevens violated his Fourth Amendment rights.  We find that, due to the Plaintiff's failure to allege an actual injury resulting from Radke's alleged conduct, his claim against Radke on this point must fail.  We also find that the Plaintiff has stated a claim for retaliation by Kellum, Stevens, and Radke, and we do not recommend dismissal of that claim at this time.  We also recommend that Summary Judgment be granted as to the St. Paul Police Department, and the City of St. Paul, on the Plaintiff's <u>Monell</u> claim, as the Plaintiff has not alleged an unconstitutional policy, and as to the St. Paul Police Officers in their official capacities.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Plaintiff's Motion for Default Judgment [Docket No. 9] be denied.

2.      That the Defendants' Motion for Summary Judgment [Docket No. 15] be granted, in part, as more fully explained in the text of this Report.


Dated:  March 1, 2010                          *s/Raymond L. Erickson*
                                               Raymond L. Erickson
                                               CHIEF U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 15, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 15, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.